Next case and last case of the day is number 16-2808, White v. Sunoco. Good afternoon, may I please the court. I'm Shane Stuffy, here representing Sunoco. I have with me today my partners Meredith Slaw and Catherine Diehl. You're welcome. I would ask to reserve two minutes for rebuttal. That will be granted. This case involves a credit card co-branded by Sunoco and Citibank that promises a 5 cent discount per gallon on gasoline purchases at Sunoco. The district court held that the plaintiff's claim that the discount was not provided isn't subject to the arbitration clause in the card agreement governing the plaintiff's account in large measure because your client didn't sign the agreement, correct? Because in the district court's view, as he said it, his view was that the plaintiff's claim derives out of a contract with Sunoco alone that is separate and independent of the card agreement with Citibank that governs the account. I want to go right to that issue because the district court's two separate contracts analysis was a clear error of law, we believe, that led the district court to create a sort of artificial and false separation between Sunoco and Citibank that is not supported and indeed is belied by the record. I want to point to some record facts that are, I think, important. We start with the promotional materials that the district court held constituted the contract with Sunoco. Those materials appear at page 43 of the record your Honor, Judge Chigaris is holding what I'm referring to. These were the three exhibits attached to the plaintiff's original complaint. I want to make some points about those materials. First, they identified Citibank as the issuer of the card and they are branded Citibank and Sunoco. They made clear that you get the discount only if you get the card and you get the card only if you survive a credit check. They made clear, the promotional materials again, that the discount can occur at the pump or it can occur as an account adjustment and if it occurs as an account adjustment it will be done by Citibank. The materials also say that you are going to... Excuse me, the record indicates that the plaintiffs did make several claims that they had not received a discount at the pump and they did get an account adjustment. Did they get that adjustment in every claim they made or only in some of them? Your Honor, I believe that the record is not completely crystal clear on this but the record would suggest that Mr. White did get a credit adjustment every time he requested one. And so, to Judge Roth's point, not only do we have... The promotional materials indicate that the full terms and conditions will come when you get your card. That's what they say. And then we know that the plaintiff applied for the card, received the terms and conditions that govern the card from Citibank  and then, as Judge Roth referred to, he called Citibank, asked for adjustments on his credit card account associated with the same allegation that forms the basis for the complaint here that I was denied the discount to which I was entitled and he received account adjustments. So, now, there is a finding in the district court's opinion at page 3 of his decision, that's page 6 of the joint appendix, where he says, and I'm now quoting, Sonoco alone is responsible for ensuring that the discount is properly applied. This finding, I think, was central and a linchpin to the district court's two separate contracts theory. His view was that the promise of a discount was made by Sonoco alone and that the responsibility to effectuate the discount was Sonoco's alone. He cites, if you look at the opinion, page paragraph 20 of the plaintiff's complaint. And paragraph 20 of the plaintiff's complaint is not evidence, of course, but advocacy and a pretty good piece of advocacy at that. It summarizes an email exchange that the plaintiff had with Citibank in the early part of 2015. As it happens, that email exchange is also in the record at page 246. The plaintiff characterizes that exchange with Citibank and says, essentially, the story he tells in the complaint is that Citibank, when he called to ask for his account adjustment, said, that's up to Sonoco. That's a separate contract. We have nothing to do with that. We can't explain why you didn't get the adjustment. And, essentially, you called the wrong place. That's paragraph 20 of the complaint. If you look at the actual email exchange that's in the record at page 246, that exchange tells quite a different story. And I commend it to the panel to take a look at it. What the Citibank representative does in that email exchange is takes ownership of the issue. She explains that the discount can occur sometimes at the pump and sometimes later by an account adjustment. She awards an adjustment to Mr. White. She points out where in his account statements he has received other credits. She apologizes and she says, thank you for being a Sonoco customer. So, the district court's conclusion that Sonoco alone was responsible for effectuating the discount is simply not supported by the record. Well, I'm trying to figure out, you're saying these promotional materials, on one hand you're saying there aren't two agreements, right? There are not. So, what are these promotional materials? How do they work into the analysis, then? Well, the promotional materials are an offer, essentially, like most advertising, an offer to make an offer. So, the customer applies for the credit and receives the card. Ultimately, the card agreement governs the relationship. And so, the real undisputed facts in the case show that this is a paradigm case for application of what this court has called equitable estoppel or alternative estoppel. So, in your theory, any merchant or any company or group that co-brands with Citibank will be entitled to arbitration? I would say, Your Honor, if the claim asserted, let me say this, certainly if the claim asserted is, as here, a claim that the central promise associated with the card was breached, that claim must be arbitrable under the arbitration agreement that governs the account. So, that would apply to any merchant using this card? They'd be bound by this arbitration agreement? Well, no, Your Honor, I think that's the distinction here, is that what you have here is you have a co-branded card by Citibank and Sunoco, where the discount is both promised and effectuated by Sunoco and Citibank together, jointly. But there's no mention of Sunoco at all in this, in the agreement? Well, the card agreement itself, Your Honor, that's delivered to the customer, I think, is the same card agreement that's used across Citibank's platforms. And that's why I think it's important, as you look at this case, to consider that the total mix of documents that are presented to the customer include, in the first instance, the Sunoco-Citibank joint promotional promise that says, if you get this card, here's how it will work, right? The discount can occur at the pump, it can occur as an account adjustment, and then those materials indicate that the full terms and conditions will be delivered with the card. So, this isn't just a case where someone used a Citibank card at the checkout line at Wegmans, and now Wegmans wants to invoke that arbitration agreement. This is a situation where Citibank and Sunoco jointly promoted this particular product, and the single, essentially, Your Honor, the single promise associated with this card is the promise that is alleged to have been breached here. But nonetheless, I mean, the operative document deals with a you and we, and you doesn't include Sunoco, or we doesn't include Sunoco, rather. Well, two responses to that, Your Honor. You guys go to the connected, right? Well, that's what's going to be my second response. My first response is, if you look at the promotional materials, page 52 of the record, that is Citibank, then, that's a document in which Citibank uses the same language. Citibank is us, or we, is saying to the customer, in the promotional materials, you can receive the discount either at the pump or as an account adjustment, and here's how we're going to do it. But Mr. White's relationship with Sunoco is different than his relationship with Citibank. He made an agreement with Citibank by accepting the card. So you're telling me, by virtue of the fact that they co-branded this, Mr. White is now, has the same agreement with Sunoco, and he has to go to arbitration? Well, Your Honor, I would say, in accepting those terms, under this court's decisional law, Sunoco, in this case, falls very comfortably into the line of cases that say a non-signatory, and we will treat ourselves as a non-signatory to that card agreement, right, can enforce the arbitration clause in the card agreement if we demonstrate two elements, a close relationship. Well, hold on. Before you get there, doesn't the Arthur Anderson v. Carlisle case instruct us, and maybe some of the older cases aren't in line with this, but doesn't it instruct us to look at state law rather than federal common law? I would say this, Your Honor. I think the plaintiffs are correct in their brief in saying that any conflict in this case would be a false conflict. In other words, the decisional law around equitable estoppel is pretty consistent. Okay. The Third Circuit's decisions are, I think, a guide and kind of consistent with the decisions across the country on this. So it seems that perhaps Pennsylvania law actually would apply, and it may well be exactly the same as Third Circuit law. Yes, yes. So do you agree Pennsylvania law should apply? I think that what would apply in this case is actually North Dakota law. If you did a strict conflicts analysis, the card agreement takes North Dakota law as the governing law. Again, I don't think it matters, but I think it would be North Dakota law. Okay. Fine. I want to make a second point, because I think it's important, is that in addition to this core error of separating Sunoco and Citibank in an artificial sense by a fact finding that just isn't supported by the record, the district court made an additional error of law that is significant and affected the outcome, and that is the district court looked at a line of cases in this circuit that govern the circumstance in which you can enforce an arbitration clause against a non-signatory where a signatory to the contract can impose the clause on a third party to the contract who is not a signatory. The DuPont case, the Griswold case that the district court relied heavily on are simply inapplicable here. And the courts in those cases held that the doctrine we espouse here of equitable or alternative estoppel is inapplicable in the case of a non-signatory. And so the use of those cases was error. I think it's interesting and notable that the district court and the plaintiff part ways on this concept of there being two separate contracts. The plaintiffs have never made that argument, and they know that they could never sustain it under the law or under the facts of this case. What they have said instead is, we're not asserting a contract claim. We're asserting a false advertising claim and a fraudulent inducement claim. So what's wrong with that? What's wrong with that, Ryan, is it runs headlong into two strong lines of decision in this court. One, private pain that says you can't avoid arbitration by simply repackaging your claim as a fraud and inducement claim. We all know Citibank is not a party here, right? If so, perhaps there'd be a contractual obligation. We know why they're not a party. Because a month before the case was filed, the plaintiff called Citibank and asked for another copy of the governing agreement, and he has smart lawyers who said, let's see if we can get around the arbitration clause by suing Sunoco alone and neglecting to assert a breach of contract claim. That is artful pleading, and this court's precedent says that that should not be countenanced as a way to evade arbitration. And second, the private paint line of cases says that that formula, I'm simply going to invoke fraud and inducement and steer around the contract doesn't work.  May it please the court. David Stanek from Government of Munich on behalf of the appellee, Plaintiff Donald White, below. This district court's rulings was correct in all respects, but I want to start, judges, with two key respects, which is overarching throughout this entire case. One is, this is a false and deceptive advertising case. The complaint alleges that a merchant, Sunoco, advertised a discount. My client purchased the product, the consumer transactions between Sunoco and my client. That's the transaction that happened. He expected to get the discount in that situation. He didn't get the discount. Well, the other side has said that when he didn't get the discount at the pump, whenever he contacted Citibank, he got the discount that he asked for. Isn't that true? I would disagree with that factual characterization by my opponent, Your Honor. I think the record... Okay, where is your factual position outlined in the appendix? I would also look at JA246, the beginning of the e-mail thread, and the e-mail thread between my client and Citibank representatives. My client did what he was supposed to do and what anyone could be expected. Okay, and that e-mail thread seems to indicate that he got, on that occasion when he complained, he got the discount. He got the credit on his account. Well, I would disagree with that, Judge Roth, for two reasons. One is, if you look, they gave him the goodwill credit, Citibank. Goodwill credit was not the discount he should have got at the pump. Why is that, Judge? Because Citibank, after looking into it and having a specialist look into it, they came back to Mr. White and said, you know what? Unfortunately, not all Sunoco's nations honored the discount. We have to ask Sunoco to give us the list and tell us whether we could do that. Sorry for the inconvenience. We will give you a goodwill credit because, you know, we're trying to be nice in terms of our credit card customer relationship we have with you. And did he ever then ask for, in another situation, ask for a credit on his account when he wasn't given the discount? He has, Your Honor. I don't know if that's in the record because of the limited arbitration discovery which was ordered in this case in which the party is conducted. I'll leave it at that. But in terms of what we don't know if he's been injured or not. Well, I would disagree, Your Honor. He has been injured. He was injured when he didn't get it when it was promised at the time of the sale. He went through at a minimum. Well, but it was not in the promotional materials. It was not necessarily promised at the time of the sale. It was promised at the time of the sale or an adjustment on his account, right? Well, I would say that. Isn't that what the promotional materials say? Not all of them say that, Your Honor. For example, if you look at Sunoco's own website, which we say is something that Mr. White looked at in our complaint, that's JA4849. Sunoco's website says, instantly receive a gas discount of five cents off every gallon of fuel purchased at any Sunoco station. We also have in the record JA327328, a billboard. Okay, that's advertising, right? We have the documents. We have the offer that was made to make a contract to get a Citibank card that would recognize five cents at the pump or an adjustment on the account. That's clearly stated in the promotional materials and in the contract with Citibank that was later formed on the basis of the promotional materials. Well, I disagree with the discount. I find it difficult to go beyond that. In a matter of basic contract law, you have an offer. You have an offer which describes what will be in the contract if Mr. White can get a credit card from Citibank. He gets a Citibank credit card. You have the promotional material which describes what he'll get, and you have the credit card with the arbitration agreement, and he is disputing what he was supposed to get under it. I find beyond that very little to scratch my head about. Well, I think the issue is the conflation of what is the separate agreement. Is it an artificial agreement? There is a consumer relationship between Sunoco and Mr. White when he makes a purchase. Okay. Are you saying that there's a contract between Mr. White and Sunoco on the basis of the promotional material? I believe that would be a contingent promise that was made by Sunoco. If he gets the credit card. If he gets the credit card. Not if he gets the credit card. On the basis of. . . If he uses the credit card. All right, go ahead. If he uses the credit card. Well, he has to get the credit card before he uses the credit card. Sure. I would concede that, Judge. Yeah. And if he uses the credit card, according to the promotional material, he is going to get a five-cent credit from Sunoco or an account adjustment. Certain of the promotional materials do suggest that. Certain of them do not. He's looked at a number of the materials, and regardless when he went to Citibank to say, I would like my adjustment, ultimately what happened is they said, we can't give it to you because Sunoco has to authorize us to do that. It's pretty clear what happened here, Your Honors, is that Sunoco probably has a number of independently owned stations, which don't have to honor Sunoco's corporate national promotions. And in those situations, we've all seen it before in our everyday lives, there will be an asterisk or something, at participating locations only. I see those myself all the time. I'm sure you do too. That's not here. That's not what Sunoco said. They said, if you buy gas from us using this credit card, you will receive five cents back from us off the product you're buying from us. That has nothing to do with the credit relationship between Mr. Branson. Or receive a discount on your credit card. I mean, that's what the offer says, right? And that's what your opponent has stated earlier, that that's what the deal was and that's what he got. And when he asked for that, every time he had the purchase, Your Honor, he did not get it. It was not on his statement. He had to go back to Citibank. Citibank told him, we can't give it to you the way it's supposed to work because Sunoco has to authorize it. Sorry. In this one instance, we'll give you a good will credit to make up for your troubles. That's not the same as getting what Sunoco promised for the purchase. And if this case continues, the discovery and the evidence will show that, in fact, he continued not to receive the discount at multiple stations, either at the pump or as an after-the-fact credit. Can we turn to the Arthur Anderson case versus Carlisle? I mentioned it to your adversary on this Estoppel issue. Which state law applies? My adversary was correct that the no-choice-of-all analysis was put forward by him. We would argue that it would be either the law specified in the agreement, potentially, or the law. That's North Dakota, right? I believe it's North Dakota. I didn't want to misspeak which Dakota judge. I believe it's North Dakota, or because we have a Florida client suing under Florida consumer protection law, potentially Florida law as well. And we also reference Pennsylvania law as well. But we think the choice, we would agree that the choice-of-law issue would be a false conflict. We think in terms of the equitable Estoppel exceptions, which I think I heard Mr. Duffy concede that we're in the world of an equitable Estoppel. He concedes he's not a party and is a non-signatory to the agreement that he's trying to enforce. I don't think the choice-of-law issue would be a real conflict. So which state law applies? Probably North Dakota is what you're saying. Well, I would say it depends on the claim. And given that we have claims here for fraud, consumer fraud, and unjust enrichment under state law, I would argue that it's probably Florida law that would apply. Okay. Now, your adversary also mentioned the line of cases, and he pointed out a distinction where those cases involve trying to enforce an arbitration agreement against a non-signatory. Do you agree with what he said about that distinction and how those cases might not apply here? I do not agree with my opponent, Judge. I think the takeaway in those cases are very pertinent to this question. I think the discussions in those cases and the policies and principles they state are important because in talking about the closeness of the relationship and the inextricable intertwinement of the claims alleged to the agreement that has the arbitration clause, you're looking at the same things. You're looking at how close is the relationship of the non-signatory to the parties to the agreement and the non-signatory's obligations under the agreement, which is an important part, because here Sunoco has zero obligations under the agreement it's trying to enforce. Didn't we in DuPont at page 202 basically disagree with that? The flip side, what your adversary mentioned, calling the characterization of the distinction without a difference wrong. It's really two different things, isn't it, trying to enforce an agreement against a signatory versus a non-signatory? I would disagree that it's wrong. I think that you're looking at the same relationship of the parties and the claims to each other and to the contract at issue and how they intertwine and how closely related the claims are in the case is to the agreement at issue. Here it's very clear that our claims have nothing to do with the cardholder agreement. We don't allege a breach of contract against anyone. Our false advertising and deception claims against Sunoco have nothing to do with the cardholder agreement. Sunoco, in fact, has no obligations under the cardholder agreement. If we wanted to bring a breach of contract claim against them, we would be on the other side of this argument right now because we wouldn't be able to point to anything in the agreement that says Sunoco is supposed to do this or it's not doing something that it's supposed to. And we cite a long line of other Third Circuit cases and district court cases, Your Honor, which stands for the proposition that you can have fraudulent and deceptive advertising cases and fraud can be standalone claims antecedent to any agreement that might arise. That was in the CardioNet case we cite and the other cases we cite where the fraud that occurred is a separate, actionable, independent tort regardless of the fact that eventually some combination of parties might have signed an agreement down the road. We're not challenging the agreement on the basis of fraud. We're not trying to say this cardholder agreement should be void because of fraud. And a lot of the cases that Sunoco cites are cases that involve that. I mean, one of their 50-year-old cases is about a contractor suing the Turnpike Commission because he grossly underbid the job because he claims the state was negligent and didn't really do all these things to inform him about the bid and we shouldn't have to do the bidding contract. That's not the same issue here. Okay, let me make sure I'm clear on what you're arguing then. You are saying that the false and deceptive advertising by Sunoco caused the plaintiff to contract with Citibank to get a credit card? No, Your Honor, I'm saying that Sunoco's false and deceptive advertising caused my client to purchase gas with a Citibank credit card at Sunoco on the expectation that he would get the discount that Sunoco promised and every time you purchase it at Sunoco, at any location, you'll get this. And that didn't happen. So then to have any teeth, that has to be an agreement between Citibank, Sunoco, and Mr. White, right? I guess I would have to say Sunoco would have to be some sort of party with some sort of obligation involved with Citibank, yes, and I don't think that's here at all. Well, Citibank couldn't be in unless they had issued a credit card to Mr. White and they issued the credit card here, you're saying, on the basis of Sunoco's false advertising. Well, I'm saying the false advertising is the discount offer, there's no fraud about the card, I'm not saying the cardholder process of Mr. White getting a card was fraudulent, I'm saying at the point of sale transaction where he's purchasing the gas with the card, as Sunoco said, any location, 5 cent discount, that's what he didn't get. So anyone who goes into a Sunoco station with a Citibank card can ask for 5 cents off, because you're saying that's what the advertising said. That's right, I would say if Sunoco said 5 cents off for AAA members, it would be the same thing, and I would say Sunoco can't enforce an arbitration agreement in a consumer's AAA agreement, I think it would be the same situation. Because we don't know who saw the offer and who didn't see the offer, but you're saying anyone who saw the offer and has a Citibank card can go into Sunoco and get 5 cents off. Yes, if you purchase gas at any Sunoco location, you are supposed to get 5 cents off a gallon of gas if you use the Citibank card, yes. Anyone who didn't, the promise in Sunoco's obligation to reduce the cost of its product has been breached. It misled the goods at the price it was selling. Okay, you've answered my question, thank you. Okay, thank you. Very briefly, with the 14 seconds remaining, we cite all the law that the presumption of arbitration does not apply here, we're dealing with a non-signatory, and the benefits in such circumstances should go to us. May I continue for 10 seconds? Sure, go ahead. And I just want to touch on the summary trial argument that they've raised. I just want to make sure it's clear for the record, we disagree there's a need for a summary trial. In the first place, we also think a summary trial was waived. Sunoco had four opportunities to brief this issue below. Every single one of their briefs, none of them said, judge, we're entitled to a summary trial, and I haven't seen anything in their briefs to say otherwise. I also don't understand what that summary trial would be. Guidotti dealt with one party said, oh, I never saw the arbitration agreement. I never signed and agreed to it. Here there's no question. We have the agreement. It's a question of law. What does the agreement say? And the agreement says it's between Citibank and Mr. White. And what's more, the arbitration clause itself further says you or we, Citibank or Mr. White, may invoke this clause. Thank you. Thank you, counsel. I think it's interesting that my colleague is willing to say that North Dakota law would apply under the card agreement, but not that the arbitration clause would apply. I'm not sure how that works. I want to address his comment that we abandon any argument that we have direct contract rights under the card agreement. Let me be clear. We believe that the most graceful and the easiest way to the right decision in this case is under the equitable estoppel doctrine because this court's decisions kind of guide us there. But the reality here is that there is a credible, I think a strong argument, that the contract here is a three-party contract and that ultimately the terms and conditions that were delivered to Mr. White do govern the relationship with Sunoco directly. I don't want to get caught up in that rabbit hole, but I do think that there is a good argument to be made that the contract here starts with the promotional materials, includes the card agreement, and that governs the relationship between the three parties. We made that argument. The district court didn't address it. I think that this is an equitable estoppel case. As I read it, that's the best way to the right conclusion. One final point. Without the card agreement, there would be no claim here. So the idea of separating everything that happens under the card agreement and the count adjustments that are made is just a false separation. This is all integrated. One of the reasons that Sunoco provides for... Can you just back up a little bit? Without the agreement, this case wouldn't exist? Without the card agreement, there would be no purchases under the program. The plaintiff would not have had the ability to make purchases for five cents off. I just want to be clear. Mr. Statik was suggesting that this is a partnership between Sunoco and Citibank, where every Citibank cardholder in the world gets five cents off of the pump. That's not true. The Sunoco rewards card is a special program co-branded by Citibank and Sunoco that Mr. White... My understanding of your opponent's answer to my question is that this is agreement between Sunoco and the whole world who has Citibank cards. Your Honor, that's not true. That's simply not correct, and the record doesn't support that. The promotional materials make clear that this is a special Citibank card that is offered in a co-branded relationship with Sunoco, and only if you use that card, not just any Citibank card. It's got to be the card that was offered pursuant to this program. So any of that literature, this co-branding literature, is there any references to arbitration from Sunoco? When you say the co-branding literature, you mean the promotional material? Right. In the sense that the promotional material says you will receive the full program terms and conditions with your card, yes. It doesn't say arbitration, but it says you will get the full terms and conditions when you get your card, and then by using the card, you're accepting those full terms and conditions. So I just wanted to make it clear we didn't abandon that argument. I don't think it's the better argument. I think the better argument is the argument we've pressed here, which is the equitable asset argument. Okay. Thank you, counsel. We thank all counsel for their excellent briefing and argument here. We'll take the case under advisement. We'd also like to conclude counsel at sidebar, if counsel is willing, and I'll ask Mr. Williams to adjourn. Please rise. The court stands adjourned.